Good morning. Our first case this morning is CMS CONTRACT MANAGEMENT v. United States. Mr. Tompkins. Good morning. I'm Bob Tompkins and I represent Navigate Affordable Housing Partners and I speak for all of the plaintiffs today. The trial court erred in several material respects, including in its interpretation and application of the Federal Grant Cooperative Agreement Act, the FGCAA. In particular, the trial court applied the wrong analysis, the Substantial Involvement Test, but ignored the primary analysis required by the FGCAA, namely ascertaining the government's principal purpose in entering into the particular contract and questionnaire, which is the Performance-Based Annual Contribution Contract, or ACC. First, as set out in our opening brief, page 34 and again 54, the trial court misread and misapplied the FGCAA by including the Substantial Involvement Test. What's the standard of review that we use to review the designation of the form of the agreement, whether it's cooperative or procurement? What is our standard of review? It would be a question of law and therefore no overview. Don't we give discretion to the government's choice of designation? Typically, you would, but in this case, the government never made a contemporaneous objective determination of what the FGCAA contract was at the time it originated the agreement. The first time the government ever mentioned the term cooperative agreement in connection with this PBACC was in the context of the grid protest in 2011 over this very round of re-competition of these contracts. So we think, because it's a litigation position and only arose in litigation, not just as a position, but it was really the position of the government, that these contracts can't be reviewed because they're not a deterrence, that that does not deserve any deference. On the other hand, there's substantial evidence in the record, which we've cited in our briefs, that demonstrates what the government's true purpose was in entering into these PBACC contracts. True purpose being what? The true purpose is for the benefit and use of the government because the government tells us that it uses the services of the PBCA. But isn't it for the benefit of the beneficiaries of housing? Not directly, and the question posed by the FGCAA is for whose direct benefit and use are these services? The government tells us throughout the history of this program that its two principal purposes were to relieve a burden on HUD staff, and it was HUD and its oversight. The memorandum that we've included in pages 12 and 13 of our briefs, we've cited to talk about how HUD uses the reports that it gets from the PBCA to take the endorsement actions and otherwise carry out its oversight and monitoring of the program. When we get a case like this, it almost has a light flashing saying the court of federal claims lacks jurisdiction. It's the type of case that belongs under the APA in a district court. If this was a cooperative agreement, shouldn't the claims court have simply ended it there and said we don't have jurisdiction beyond making that decision? No, Your Honor. In the case of the jurisdiction of the court of federal claims, and assuming that these are, in fact, properly considered cooperative agreements, the jurisdiction under the Tucker Act relies on the definition of procurement in Title 41, Section 111. That definition of procurement is much broader than the definition of procurement under the FGCAA. That definition in Section 111 merely speaks to the government acquiring products or services, which is what the case is. Was this a bid protest? It was. But the government conceded they didn't follow the requirements of a bid protest. Correct. So even on your basis, we should send it back? On our basis, you should send it back. We believe there's more than ample evidence in the record to demonstrate, in fact, the government is entering a procurement contract with these PDCAs. And on that basis, it should be sent back with instructions that this is a procurement, the government has admitted it didn't follow the procurement rules, and therefore must proceed in accordance with that, or the trial court must proceed in accordance with that. I just want to make sure that we have not lost track of the substantial involvement test. We didn't mention it in our reply, because the reply limitations on words were brief, but it is a significant error by the trial court. The HUD argues very clearly that they are not really acquiring any services at all. They are arguing that they are simply granting administrative authority and administering a program as they are entitled to do under the statute, which gives them authority to either have a cooperative agreement or a procurement contract. That's been HUD's litigation argument. The documents in the record tell more precisely what HUD is doing and has always intended to do with these PDCA contracts, which is to relieve a burden on its staff and to enhance its ability to effect oversight of the program. This Housing Assistance Payment Program really involves one thing. It's a subsidy program, so it's just money. There are no services you can deliver. Well, help me out here with how I decide what HUD's intent is beyond what they tell me it is. They tell me they are not trying to ease their burden. They are just administering a program with a cooperative agreement. Shouldn't I defer to that to some degree? Again, because the government's arguments here have been raised for the first time in litigation, and they didn't make a contemporaneous decision or document one regarding the status of the contract, you should review that de novo or request deference if you otherwise mind. In this case, the government has a special obligation in this particular aspect of the housing program, whereas in some other parts of the housing program Congress prescribed to the government a two-step contracting approach, saying government, you should enter into a contract with PHA, which in turn will enter into a housing assistance payment contract with an owner. In this substantial rehabilitation and reconstruction program, the government's interaction with the owner and contracting with the owner is direct. The government has an obligation through the HAC contract to provide the money, and in that same contract, the owner has the right to receive it. So there is a single instrument in question here. Now, those HAC contracts have their origin from 1974 to 1999. There were no PDCJs involved. Congress has told HUD, through the Moderate and Multifamily Affordable Housing and Relief Act, that it must continue to provide assistance to those owners with which it had already contracted. So when it's introducing the PDCJ into the mix, it's not changing the legal relationship with the owner. HUD is still legally obligated through that single instrument to the owner. And HUD is using the services of the PDCA to fulfill its legal obligations under the contract and under the law to the owner. So, to answer your question, that is another reason why the services are primarily of the direct benefit and use of the government, because it has a legal obligation to do these things, and wouldn't be doing them if it had not contracted out to the PDCA. I'll go back to the substantial involvement test. That is a test that is used to differentiate between grants and cooperative agreements. The language of 6305 says if substantial involvement by the government is contemplated, then one should use it for a cooperative agreement. The mirror image of that substantial involvement test is found in 6304 government grants. It says if you are not expecting the government to be substantially involved, use a grant. Clearly, that is a test that differentiates between the two types of assistance, and it only applies once the principal purpose test has been exhausted. It certainly doesn't create a contrasting situation between procurements and cooperative agreements. If Congress had intended substantial involvement to differentiate between procurement contracts and cooperative agreements, it would have put the mirror language in the procurement contract section, which it didn't. In addition to the authority cited in our brief, I would commend to the Court, the Senate report cited at page 23 of our brief discussing the 1982 amendments to the FGCAA. In that report, the Senate committee, which looked at this very issue, said the substantial involvement issue is of no consequence to the principal purpose analysis. We think it was an error by the trial court to imply a substantial involvement test and suggest that it is a differentiating point between procurement and cooperative agreements. In terms of principal purpose, what makes the PDACC contracts unique is that they have a 40-page statement of work that is tended to PHA performance responsibilities, and it defines the various services the PDACC will provide. There is a common thread of services required that the PDACC monitor and verify various activities by the owner, and then take that information and report to HUD. As I mentioned before, the record shows that what HUD then does with that information is to undertake its oversight responsibilities. That is discussed again at pages 12 and 13 of our brief, and is supported by various memoranda in the Joint Appendix, down at pages 1870-1885. Now, every year when HUD goes to Congress and asks for appropriation for this program, they expressly address how the PDCAs are benefiting HUD. They say the PDCAs support HUD field staff, that's the Joint Appendix 1964, and HUD explains how PDCAs are, quote, integral to the Department's efforts to be more effective in its oversight and monitoring of the program, as the Joint Appendix states, 1960. So the record makes clear that HUD uses the information reported to it by the PDCA to carry out HUD's functions, to avoid improper payments, to conduct oversight, and HUD benefits from the PDCA's services, because it would otherwise have to use its own staff to carry out these services. So, does GAO properly consider these essential, uncontroverted facts in the administrative record, and apply to the FGCAA? The trial court did not. What role does GAO play in all of this? GAO is designated by Congress to hear bid protests, and has been deemed by many, including this Court, to be an expert in that field. The GAO undertook a thorough analysis, and we raised our protests there, and sustained our protests on the very basis that, in fact, these contracts were primarily for the direct benefit and use of the federal government. We, of course, agree with the GAO. But the GAO, in reaching its decision, focused precisely on the issue of the principal purpose of the agreement, as required by the FGCAA. The trial court did not. It was diverted on to other issues that, ultimately, we decided away from the principal agreement, and started to undertake. And I think we're certainly ready for my time to move on. That'll be fine. Thank you, Mr. Tompkins. Mr. Manhart. May I please record? Let me begin to address one of the themes that was discussed in the opening. That is the question of litigation position. This is not a litigation position. What we're here to talk about is what the HUD, Housing and Urban Development, did in 2012 when it issued a Notice of Funding Agreement. That is an expression that it intended to enter into an agreement, and solicited parties to participate in an agreement with HUD. And we're looking at what type, whether they selected the type of agreement that they did. Section 6305 says you must transfer a thing of value. And that has to be the principal purpose. What is the thing of value that you transferred? Money. What is the money? The administrative cost of the contract? That really is hard to accept. It's the thing of value that one would have set up a cooperative agreement for. You have a cooperative agreement to have an administrative fund transfer? Absolutely. That is actually the most common form. OMB, the Congress... No, no, no. You transfer a significant grant fund or some significant pot of money or some significant service. As the Federal Grants and Cooperative Agreements Act recognizes, both grants and cooperative agreements are, broadly speaking, both assistance agreements. OMB, that statute also delegated to OMB to grant OMB authority to issue guidance for interpreting that act. The OMB interpretation expressly identifies money as the most common thing of value. Well, if we were to look, actually, at the text of your announcement, NOSA, NOFA, what do you people call this thing? For the argument purposes, we say NOFA, but it's a Notice of Funding Agreement. I know, but that's fine. I just want to make sure I get the acronyms right. There's only acronyms in these cases, so try to keep up. But in your announcement, which it seems to me would be a place that would be likely to give us a clear understanding of what the government is intending by this agreement, it expressly says under Program Description, that this award is to provide for the administration of project-based Section 8 HAP contracts for Section 8 projects located in each of those states. I don't see how that's not really procurement, because what you're doing here, quite clearly, is saying we will pay you for administering these services for us. That is the clear statement in your Program Description, Part A, under Funding Opportunity Description. I'd ask the Court to look at the NOFA and look at all of its portions. Particularly, I'd direct the Court to look in the Joint Appendix J300, Administrative Record Pages 553-554, which is the Purpose Section. It describes that purpose as implementing the policy provided by Congress under the housing of the system. Can you slow down, please? I would love to keep up with you, but if you talk a million miles a minute and start throwing crazy numbers out, I can't do it. So, where are we? Where is it you want me to look? If you look at pages 553-554. AR 553 and 554? It's actually noted J300 AR 553-554. Okay. And the agency identifies specifically what it is intending to do. It is intending to implement the policy as established in Section 2. Where exactly are you? I'm on 553. Under this page, it says Full Text of Announcement, Roman Number 1, Section B. That's exactly where I was reading from ten seconds ago. To provide for the administration of project-based Section 8 HAP contracts for Section 8 projects located in each of those states. It seems to me to be a service contract. No, it is not a service contract. The government is not acquiring anything for its own direct benefit. It's not acquiring the administration of project-based Section 8 contracts? No. If you continue to read the Purpose Section, Section B, continue down there, what it explains is it is adhering to the policies provided by Congress to provide assistance dating from 1937 to assist the states in attempting to address the shortage of affordable housing for low income families. And if this agreement is not used, who has to do it? If you don't send it to these... Under Section 8B.1, the agency must work through... But you would have to do it yourself, wouldn't you? We are only permitted to do so if there is no PHA... There is no procurement contract. No, not procurement contract. If there is no state entity willing to do it. If you read 8B.1, it is very clear the agency's authorization is to enter into an agreement with the states. And we do that and we pass... And I also ask you to look at, if you want to be real clear about this, let's look at the terms of the agency itself. At page 1362 of the appendix, it defines the roles of that PHA, which assumes the role of contract administrator, PBCS. Page 1362 says express... I'm sorry, excuse me. My mistake. 1361 says the PHA determines the amount of assistance that is provided to the housing owner. Who is the beneficiary of the thing of value? The ultimate beneficiary are low income families. The assistance is provided to the states in two forms. In the forms, as the court has said, in a form of assistance to be distributed to those owners by the state, but also to fund and allow them the means by which to execute the operation. So, just out of curiosity, would you... If the Social Security Administration decided that it was going to hire state actors for the purpose of helping elderly and disabled individuals within that state receive the benefits that they were to receive, and then hired state actors to implement the administrative portions of the SSA benefits, would that be a procurement contract or is that going to fit your bill for a cooperative service agreement? We don't... I mean, it's still a benefit. Hey, it's a benefit to the individuals within the state. We'd have to look at what the agency's statutory responsibilities are. If the Social Security's statutory responsibility is to pay recipients, that may well be a procurement matter. It is not part of the statutory responsibility under the Housing Act of 1937, as amended, to pay owners for low housing. Congress has for 75 years... This is essentially a new bill program brought forward to our contemporary... PBACC's were originally contracts, right? Corporate union contracts. No, no, no. Procurement contract. No. Why does GAO say differently? GAO misconstrued a factual error and stated that under the half agreement HUD has agreed to pay the owners. That's flatly incorrect. And I ask the court to look at both the half agreement and I also ask the court to be sure to look at the agency and note what the agency expressly intended. But let me go back to the first point. If we look at the half agreement... Didn't you change the label? Didn't the 1999 version of this initiative clearly establish itself as a procurement contract? No. It expressly said it was not. It says this is not a formal procurement. We are not adhering to formal procurement rules. What about... It says that explicitly. And there's also a fact... Let's not talk about history. Let's not talk about history? In 1999... I think the history here is relevant. It shows what the government intended this to be all along. And then I think it flips because you were worried the state attorney generals were going to come after you. They had no ground to come after you. But I think that it was the fear factor that was at play and you all flipped and decided we were going to relabel this. I think what's being missed here is Congress's words. In 1997, Congress said the agency should be... There's no question. In 1974, Congress created a provision where HUD would enter into these agreements through the states but allow owners the option of entering into some of these agreements directly with HUD. Many, many owners did that in 1974. In 1983, Congress repealed that authority. In 1997, Congress came back and said we want the states to assume the traditional role we've always intended for the states to have in their relationship with the United States in these sorts of programs. Mr. Manhart, I'm looking at the GAO Red Book that talks about the Senate Committee Report. The fact that the product or service produced by the intermediary may benefit another party, the housing resident, is irrelevant. What is important is whether the government's principal purpose is to acquire the intermediary services. Doesn't that run counter to your position? Is the GAO Red Book from the Office of General Counsel not an authority? In other statements, the GAO also... In fact, in its 1978, I believe, interpretive statement that we cited in our briefs, the GAO expressly considers this intermediary question. And it says that the intermediary... Where the federal government is providing assistance to the first party, the party designed by Congress, identified by Congress as the recipient, that's the assisted party. And here, Section 8B tells HUD to enter into an agreement with the states so that they may assist. And critically, that is how these agreements were written. You're saying the intermediary doesn't count? No, the intermediary, in a fundamental way, the United States is trying to help families, affordable families, low-income families have decent, safe sanitary housing. But Congress has designed a system that we act through the states. It expressed that from 1937 right down through the current language of the purposes of this statute that appear in 42 U.S.C. 1437, that the role of the United States is one to provide funds and credit to assist the states. Because these are communities who are assisting. And they are individual communities. There's much more involved here. And if we look at... I'd ask the Court to look at these instruments themselves. The NOFA says expressly what the agency intends to do. It intends its principal purpose is to transfer funds... The NOFA says under this, or I should say the request for proposal, under this RFP, the offerors will competitively bid to perform contract administration services for properties within project-based Section HAP contracts. I'm having a difficulty understanding how this is not a service contract, because it says it is in multiple places. That is, the contract for them to administer the program is non-dispositive because we have no express obligation to manage these contracts. That's why I'm asking the Court to look at the instruments themselves. Under the HAP contract, there is an express definition of who the parties are. The party is a contract... That's statute at page 2270 of the appendix. Again, it's page 2270. This is a contract between the contract administrator and the owner. If we look at the ACC, what the purpose of the ACC is, it says expressly it is asking states, their housing authorities, if they wish to enter into an agreement to be that contract administrator. That is on page 1359 of the record. But you all would have to be doing that administration, as the Chief has indicated earlier, if you didn't have the contract administrator. No, we would not. We don't do it now. That's why, and correct me, we've got off point here. In 1999, the bulk of this portfolio was administered by HUD. That's not true anymore. That portfolio that we're talking about is roughly 17,500 projects, which are today administered by the states. If that's not clear... Under a contract... You're operating under a misassumption of what this program is. This portfolio, and it's in this record at page 6536, this portfolio is currently administered by the states. But it's because you outsourced it in 1999. Not because you wouldn't have to do it otherwise, but because you outsourced it. Because we chose to follow an assistance model as Congress intended. Yes, Congress in 1974 allowed owners to ask HUD to enter the program directly, and HUD had assistance agreements directly to owners. But over time, and under Section 8B.1, the agency has moved this program into its traditional form, where HUD acts solely through the states. Your Honor, do you want us to affirm that this is a cooperative agreement and vacate the rest of the decision below? Yes, we would. That's jurisdictionally correct, Your Honor. Obviously, it would help the agency to have the umbrella of the entirety of the cooperative agreement approved, but that would not be appropriate. This is a cooperative agreement as found by the trial court, and under this court's decision in resource conservation, the jurisdictional problem, 1491b1, this court has said it is exclusively concerned with procurements. And so, it would be appropriate, what the court ought to have done is upon determining this is a cooperative agreement ought to have dismissed and not reach the reasonableness under the cooperative agreement under any kind of aviation. But the claims court had jurisdiction to decide whether it's a cooperative agreement or procurement. Absolutely. We didn't challenge that. The... So, again, I would ask the court to be sure to review... Please, finish. To review the terms of the ACC itself in the record of pages 1359 to 1362 and look at the actual duties assigned to the ACC in these matters. And the court will be clear of their central role in the disposition of their responsibilities to their citizens. Thank you, Mr. Menhart. Mr. Tompkins, you have just short of four minutes. Naturally, we disagree with everything you just heard, and we've addressed all of these issues that are pretty extensive, and then those back to you. Let me first start by saying section 81 does not apply to these agreements. Is the thing of value here just the money? If that's the case, if they're just transferring a pot of money, then why can't this be a cooperative agreement for that transfer? So, the thing of value in this program is the assistance payment, which ultimately benefits the tenant. That is transferred through the HAP contract. And contrary to what you just heard, PUD is still a party to the HAP contract, and that single instrument is the contract by which the payment is made. PUD is still a party to the HAP contract, make no mistake about it. At page 2270 of the Joint Appendix, section 4, grade 2, it says, notwithstanding such assignment, meaning to responsibilities to the contract administrator, PUD shall remain a party to the provisions of this renewal contract to specify PUD's role. Among those roles is the one found in section 2, which deals with the funding. It says in section 2B, execution of this renewal contract by the contract administrator is an obligation by PUD of fill-in-the-blank amount of money. So, they have not supplied that money to these parties. So, the money involved in the HAP contract is the assistance payment. That's the bulk of the money. It is the money in the program. The administrative fee, as I believe you noted, is merely consideration for the services that our clients provide, as you would find in any procurement contract. So, fallacy number one is that PUD is not a party to the HAP contract. In fact, they are. The HAP contract itself demonstrates that. Two is that PUD is not proceeding under section 8B1 of the Housing Act, which applies to existing housing. Both the GAO and the Court of Federal Claims considered that argument for PUD and rejected it. I commend the analysis provided by both of those for your review. These contracts arose under a special arrangement, under the substantial rehabilitation and new construction program, where Congress specifically contemplated that PUD and the owner would contract directly. That's the origin of these 21,000 contracts. Now, PUD rescinded the authority for PUD to enter into new relationships like that. They closed the program. But these were long-term contracts, 30, 40 years in some cases, and owners needed to have them renewed to continue the assistance. So, when the Congress passed MARA in 1997, they directed PUD to renew the assistance. They said, you shall provide assistance to the owners upon the request of MARA. There are only two parties mentioned in MARA, PUD and the project owner. There's no discussion about using PBCAs. Congress was well aware of who the PBCAs were and the broader annual contribution contract concept. Could have designated it there, but didn't. They just kept the bilateral relationship between PUD and the project owner through MARA. That's all these extensions are, and that's why they have contracts. Mr. Manhart dismisses the GAO result in this case as a mistake of fact. How would you characterize the GAO? Well, of course, obviously we agree with it. We see no mistake in fact in it. The GAO carefully considered the statutory context in which this program arises, in which these contracts arise. For evidence of that, I commend you to Joint Appendix page 2593 to 96, where GAO gave PUD a second bite at the apple in the briefing, around a briefing, that was not customary, and specifically asked them to address specific issues about statutory authority. So, GAO gave a very thorough review of this. This court has recognized GAO as an expert in the field of procurement, and they properly applied the FGCAA. Ultimately, this case is not that complicated. The government keeps telling us to look at the mandate behind the statute at issue, the Housing Act, and it is clearly to provide assistance. It's not to provide a service. It's to provide assistance to low-income folks to have a safe place to live. So, why doesn't that lend itself to this more likely being a cooperative agreement? So, that cooperative mandate appears only in the purpose language, and it has been there since the beginning of the Housing Act of 1937. Congress, though, sets up separate programs under the Housing Act. The existing housing program, which doesn't apply here, that's under Section E1. The Substantial Rehabilitation and Reconstruction program, which does apply here. And in that particular program, Congress's charge was for the owners of the PUD to contract with one another directly. So, and we also pointed to an example in our reply brief of MARA Section 513, which created yet another program, a mark-to-market program, not directly applicable here, but it's instructive because in that program, Congress said to HUD, enter into cooperative agreements with PHAs to carry out this specific program. If the purpose language in the statute created an overarching mandate to use assistance all the time, Congress wouldn't need to come back and designate different approaches in each of the specific programs. The program we're concerned about talks about a bilateral relationship between HUD and the project owner. As the GAO correctly pointed out, that creates the obligation for HUD to provide that which it does through the HAP contracts. And when it seeks the assistance of the PDCA, it's really taking off its plate those things which it was statutorily and contractually obligated to provide. That puts this into the zone of the intermediary, as the GAO correctly pointed out. Thank you, Mr. Tompkins.